**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| RAVGEN, INC.,<br><br>                  Plaintiff,<br><br>       v.<br><br>NATERA, INC. and NSTX, INC.,<br><br>                Defendants. | **Civil Action No. 1:20-cv-000692-ADA**<br><br>**JURY TRIAL DEMANDED** |

**<u>JOINT PRETRIAL ORDER</u>**

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, W.D. Tex. Local Rule CV-16, the Court's July 31, 2020 Standing Order on Pre-Trial Procedures and Requirements in Civil Cases, and the parties' June 18, 2021 Joint Motion for Entry of Amended Scheduling Order (Dkt. 91), Plaintiff Ravgen, Inc. and Defendants Natera, Inc. and NSTX, Inc. submit this Joint Pretrial Order governing trial of this action. This Joint Pretrial Order is being submitted in advance of the Pretrial Conference scheduled on November 18, 2021 at 9:00 a.m.[1] Jury selection and Trial are scheduled to begin on December 13, 2021 at 9:00 a.m.

This order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

The parties reserve the right to seek leave to supplement or amend this Joint Pretrial Order based on the Court's forthcoming rulings, other subsequent events, or by agreement.

## I.   COUNSEL FOR THE PARTIES

### A.  Attorneys For Plaintiff Ravgen, Inc.

Deron R. Dacus
State Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

John M. Desmarais (*pro hac vice*)
Kerri-Ann Limbeek (*pro hac vice*)
Brian D. Matty (*pro hac vice*)
Kyle G. Petrie (*pro hac vice*)
Joze Welsh (*pro hac vice*)
Jun Tong (*pro hac vice*)
Deborah J. Mariottini (*pro hac vice*)
Vi T. Tran (*pro hac vice*)

---

[1] Unless otherwise indicated, all times referenced in this Joint Pretrial Order are to local time in Austin, Texas.

**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
jdesmarais@desmaraisllp.com
klimbeek@desmaraisllp.com
bmatty@desmaraisllp.com
kpetrie@desmaraisllp.com
jwelsh@desmaraisllp.com
jtong@desmaraisllp.com
dmariottini@desmaraisllp.com
vtran@desmaraisllp.com

**B.  Attorneys For Defendants Natera, Inc. and NSTX, Inc.**

Stephen M. Hash
Texas Bar No. 24012800
Samoneh Kadivar
Texas Bar No. 24097911
Alexander Piala (*pro hac vice*)
Texas Bar No. 24110223
**BAKER BOTTS L.L.P**.
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Phone: (512) 322-5471
Fax: (512) 322-3622
stephen.hash@bakerbotts.com
samoneh.kadivar@bakerbotts.com
alexander.piala@bakerbotts.com

Elizabeth Durham Flannery
Texas Bar No. 24045815
Michael Hawes (*pro hac vice*)
Texas Bar No. 24010761
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, TX 77002-4995
Phone: (713) 229-1234
liz.flannery@bakerbotts.com
michael.hawes@bakerbotts.com

## II.     JURISDICTION

1.      This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. No party contests personal or subject matter jurisdiction for purposes of this action, and this Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. §§ 271, *et seq*., and 28 U.S.C. §§ 1331 and 1338(a).

2.      No party contests venue for purposes of this action.

## III.    STATEMENT OF THE CASE

3.      This is a patent case. The plaintiff and counterclaim-defendant in this case is Ravgen, Inc. ("Plaintiff" or "Ravgen").  The defendants and counterclaimants in this case are Natera, Inc. and NSTX, Inc. (collectively "Defendants" or "Natera").

4.      On June 1, 2020, Ravgen filed suit against Natera alleging patent infringement of Ravgen's United States Patent Nos. 7,332,277 (the "'277 Patent") and 7,727,720 (the "'720 Patent") (collectively the "Asserted Patents").  *See* Dkt. 1.  Dr. Ravinder S. Dhallan is the named inventor of the Asserted Patents, which are titled "Methods for Detection of Genetic Disorders." Ravgen alleges that Natera's performance of its Panorama Noninvasive Prenatal Test ("Panorama test"), Vistara Single-Gene Noninvasive Prenatal Test ("Vistara test"), Signatera test, and Prospera Transplant Assessment Test ("Prospera test") (collectively the "Accused Products") infringe claims 13, 125, 130, and 132 of the '277 Patent and claims 5, 9, and 28 of the '720 Patent (collectively the "Asserted Claims").

5.      Ravgen seeks a judgment that Natera infringes the Asserted Claims of the '277 and '720 Patents, and that such infringement has been and continues to be willful.  Ravgen seeks damages to compensate it for Natera's alleged acts of infringement in the form of a reasonable royalty. Ravgen also seeks both pre-verdict and post-verdict damages up to the time of judgment and the payment of a post-judgment ongoing enhanced reasonable royalty. Ravgen also seeks an

accounting of damages from the last date of financial discovery provided by Natera through at least to the date of judgment, pre-judgment and post-judgment interest and costs, attorneys' fees, and enhanced damages against Natera pursuant to 35 U.S.C. §§ 284, 285 and Fed. R. Civ. P. 54. Ravgen also seeks any further relief that the Court deems just or proper.

6.      Natera asserts that it does not infringe any of the Asserted Claims and that the Asserted Claims are invalid and unenforceable.  Natera denies that Ravgen is entitled to any money damages or any other relief that it seeks.  Natera further seeks declaratory relief on three grounds: (i) noninfringement of any claim of the Asserted Patents; (ii) that one or more claims of the Asserted Patents are invalid; and (iii) that the Asserted Patents are unenforceable.  Natera also seeks its costs and attorneys' fees in defending this action.  Natera also requests that the Court award to Natera any further relief that the Court deems just or proper.  Ravgen denies that any of the Asserted Claims are invalid or unenforceable and asserts that Natera's declaratory and other relief should be denied.

**A. Claim Construction**

7.      On February 9, 2021, the Court held a claim construction hearing regarding certain claim terms from the '277 and '720 Patents and entered the below constructions for those claim terms.  *See* Dkt. 95.

| Claim Term | Court's Claim Construction |
|---|---|
| "a the sample"<br><br>('277 Patent, Claim 81)<br>Proposed for construction by Plaintiff | "the sample" |
| "relative amount of alleles"/"relative amount of the alleles"<br>('277 Patent, Claims 1, 116)<br>Proposed for construction by Defendants | Plain and ordinary meaning |
| "agent that [inhibits cell lysis to inhibit the lysis of cells/inhibits lysis of cells/impedes cell lysis] . . .wherein said agent is selected from the group | Plain and ordinary meaning |

| | |
|---|---|
| consisting of membrane stabilizer, crosslinker, and cell lysis inhibitor"<br><br>('277 Patent, Claims 8, 55, 81; '720 Patent, Claim 1) Proposed for construction by Defendants | |
| "if cells are present"<br><br>('277 Patent, Claim 8, 55, 81; '720 Patent, Claim 1) Proposed for construction by Defendants | Conditions "[inhibits cell lysis to inhibit the lysis of cells/inhibits lysis of cells/impedes cell lysis]" |
| "free fetal DNA isolated" ('277 Patent, Claim 55)<br><br>"isolating free fetal nucleic acid" ('277 Patent, Claim 81)<br><br>"isolating free nucleic acid" ('720 Patent, Claim 1)<br><br>Proposed for construction by Defendants | Plain and ordinary meaning |

## IV.   CONTENTIONS OF THE PARTIES

8.     By providing the below contentions, the parties do not concede that any of the following issues are appropriate for trial (at all or to a jury). The parties also do not waive any of their pending motions.

### A.  Ravgen's Statement of Contentions

9.     Ravgen is the assignee and owner of all substantial rights, title, and interest in and to the '277 Patent.

10.     Ravgen is the assignee and owner of all substantial rights, title, and interest in and to the '720 Patent.

11.     Ravgen has standing to bring this suit.

12.     Natera directly infringed, and continues to directly infringe, claim 5 of the '720 Patent and claims 13, 125, 130, and 132 of the '277 Patent, either literally or under the doctrine of equivalents, by using its Panorama test.

13.     Natera directly infringed, and continues to directly infringe, claims 5 and 9 of the '720 Patent and claims 13, 125, 130, and 132 of the '277 Patent, either literally or under the doctrine of equivalents, by using its Vistara test, including by directing and controlling one or more claim steps performed by its laboratory partner, Baylor Miraca Genetics Laboratories, LLC ("Baylor" or "Baylor Genetics").

14.     Natera directly infringed, and continues to directly infringe, claims 5, 9, and 28 of the '720 Patent, either literally or under the doctrine of equivalents, by using its Signatera test.

15.     Natera directly infringed, and continues to directly infringe, claims 5 and 28 of the '720 Patent, either literally or under the doctrine of equivalents, by using its Prospera test.

16.     Natera indirectly infringed, and continues to indirectly infringe, claims 5 and 9 of the '720 Patent and claims 13, 125, 130, and 132 of the '277 Patent, either literally or under the doctrine of equivalents, by inducing its laboratory partner, Baylor, to directly infringe by using its Vistara test.

17.     Natera's infringement of the Asserted Claims of the '277 and '720 Patents has been, and continues to be, willful.

18.     Natera has had actual or constructive knowledge of the '277 and '720 Patents and its infringement of the '277 and '720 Patents.

19.     The Asserted Claims of the '277 and '720 Patents are not invalid for any reason, including under 35 U.S.C. §§ 102, 103, and 112.

20.     Dr. Ravinder S. Dhallan is the proper and sole inventor of the Asserted Patents and the Asserted Patents are not invalid for improper inventorship under 35 U.S.C. § 102(f).  Even if

Dr. Dhallan is not the sole inventor, this Court should correct the inventorship under 35 U.S.C. § 265 rather than invalidate the patents.[2]

21.     The Asserted Claims of the '277 and '720 Patents are not patent ineligible for any reason, including under 35 U.S.C. § 101.

---

[2] **Ravgen's Position:** As stated in its Motion for Summary Judgment (Dkt. 114) and Reply (Dkt. 156), Natera cannot legally meet its burden to prove its improper inventorship invalidity theory by clear and convincing evidence. Accordingly, the improper inventorship theory should be resolved prior to any trial. To the extent the Court denies Ravgen's Motion for Summary Judgment, "[i]nventorship is a question of law" (see *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998)) and Ravgen requests that the Court hear evidence on any underlying facts regarding Natera's improper inventorship theory in a separate bench trial along with Natera's inequitable conduct claim. Allowing Natera to present evidence to the jury regarding any underlying findings of fact to support its improper inventorship theory will be unduly prejudicial, confuse the issues, and mislead the jury. Fed. R. Evid. 403. As stated in its Opposition to Ravgen's Motion for Summary Judgment, Natera is attempting to use its incorrect inventorship theory to create "credibility issues" related to "Dr. Dhallan's failure to identify Drs. Mattagajasingh and Au as authors on the 2007 Lancet publication." *See* Dkt. 137 at 9. These determinations are unrelated to any jury issue and are unduly prejudicial. This is particularly true since "[a] patent cannot be invalidated if inventorship can be corrected instead," *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1376 (Fed. Cir. 2020), and "the patentee must be given an opportunity to invoke the benefits of section 256," *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350–51 (Fed. Cir. 1998). Additionally, Natera has not pleaded improper inventorship—let alone asked the Court for a jury trial on that issue. *See* Dkt. 69; *cf. Hoffmann-La Roche Inc. v. Cobalt Pharms., Inc.*, No. 07-cv-04539, 2010 WL 3118574, at *1 (D.N.J. Aug. 5, 2010) (Defendant seeking leave to plead improper inventorship under § 102(f)); *Egenera*, 972 F.3d at 1376 (Defendant amended answer in district court to specifically plead invalidity under § 102(f)).

**Natera's Position:** If Ravgen's summary judgment motion is denied, the defense of improper inventorship is no different than the defense of obviousness: an issue of law based on underlying facts. Determinations of inventorship involve the very factual issue of mental states such as conception. *See Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1305 (Fed. Cir. 2010). Ravgen provides no legal basis for handling improper inventorship inconsistently with obviousness nor any reason, other than conclusory assertions, to believe that the jury will be confused or prejudiced. Natera identified its § 102(f) defenses in its invalidity contentions per the Court's Order Governing Proceedings, and Ravgen cites no authority requiring Natera to plead that defense with specificity in its answer, particularly since Ravgen has been on notice of those defenses by virtue of Natera's invalidity contentions. If the Court is inclined to correct inventorship by adding any inventors to either of the Asserted Patents, Natera is at least entitled to further discovery, *e.g.*, regarding those newly-added inventors' work on the subject matter claimed, their awareness of prior art and involvement in prosecution of the Asserted Patents, and whether they properly assigned their rights in the Asserted Patents to Ravgen.

22.     The Asserted Claims of the '277 and '720 Patents are not unenforceable for any reason.

23.     Ravgen has suffered damages by Natera's infringement and is entitled to compensation, including the dollar amount that will compensate Ravgen for infringement of the Asserted Claims of the '277 and '720 Patents, including the amount of a reasonable royalty.

24.     Ravgen is entitled to a post-judgment ongoing enhanced royalty to compensate Ravgen for Natera's future infringement.

25.     Ravgen is entitled to an accounting of damages at least up to the date of judgment.

26.     Natera's infringement and conduct in this case justifies a finding that this case is exceptional pursuant to 35 U.S.C. § 285 and Ravgen is entitled to an award of its costs and attorneys' fees.

27.     Ravgen is entitled to an award of pre-judgment and post-judgment interest.

28.     Ravgen is entitled to enhanced damages due to Natera's willful infringement under 35 U.S.C. § 284.

29.     Ravgen is entitled to any further relief that the Court deems just or proper.

30.     To the extent not explicitly addressed, Ravgen disagrees with each of Natera's contentions below.

**B.  Natera's Statement of Contentions**

31.     Natera asserts that it does not infringe any of the Asserted Claims and that the asserted claims are invalid and unenforceable.  Natera denies that Ravgen is entitled to any money damages or any other relief that it seeks.  Natera further seeks declaratory relief on three grounds: (i) that Natera does not infringe, either directly or indirectly, any claim of the Asserted Patents; (ii) that one or more claims of the Asserted Patents are invalid; and (iii) that the Asserted Patents are unenforceable.  Ravgen denies that Natera is entitled to declarations of non-infringement and

invalidity.  Natera also seeks its costs and attorneys' fees in defending this action.  Natera also requests that the Court award to Natera any further relief that the Court deems just or proper.

## V.        JOINT STATEMENT OF UNCONTESTED FACTS

32.    The parties' Joint Statement of Uncontested Facts is attached as **Exhibit 1**.

33.    Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury, and will be charged for the time used to do so. If one party reads a portion of the uncontested facts, the other party may immediately thereafter read any additional portion as appropriate for purposes of completeness.

## VI.       DISPUTED ISSUES OF FACT AND LAW

34.    The parties identify the following issues that remain to be litigated. The parties reserve the right to identify additional factual or legal issues that may arise, including issues raised by any further discovery undertaken in this case, the Court's rulings on any pending motion, or ruling made at the pretrial conference in this action. By providing this statement, the parties do not concede that all of these issues are appropriate for trial (at all or to a jury).[3] The parties do not waive any of their pending motions.

35.    Ravgen's Disputed Issues of Fact and Law is attached as **Exhibit 2**.

36.    Natera's Disputed Issues of Fact and Law is attached as **Exhibit 3**.

## VII.      EXHIBITS

### A.        Trial Exhibits

37.    Ravgen's Exhibit List is attached as **Exhibit 4**. Ravgen identified its exhibits with PTX numbers, starting with PTX-1. Natera's Objections to Ravgen's Exhibit List are also provided in **Exhibit 4**.

---

[3] For example, Natera requests a bench trial on its defense that the asserted claims of the '277 and '720 Patents are patent ineligible under 35 U.S.C. § 101.

38.     Natera's Exhibit List is attached as **Exhibit 5**. Natera identified its exhibits with DTX numbers, starting with DTX-1. Ravgen's Objections to Natera's Exhibit List are also provided in **Exhibit 5**.

39.     A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial.

40.     **[Ravgen's Proposal:** With the exception of discovery admissions, *e.g.*, pleadings, interrogatory responses, request for admission responses, Joint Statement of Uncontested Facts (**Ex. 1**),][4] No exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit. At some point before the completion of the witness's testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence by exhibit number.  Once admitted, counsel may publish exhibits to the jury without requesting to do so.

41.     Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections. Any exhibit, once admitted, may be used by either party. The listing of an exhibit by a party on its exhibit list, or the exhibit's inclusion on the joint exhibit list, does not waive any objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence. In other words, a party does not waive its objections to an exhibit by including that exhibit on its own exhibit list, or by the exhibit's inclusion on the joint exhibit list.

42.     A party will provide a list of exhibits to be used in connection with direct examination, including indicating with which witness the exhibit will be used, by **7:00 p.m.** the

---

[4] **Ravgen's Position:** *See* Footnote 5, *infra*.

 **Natera's Position:** *See* Footnote 5, *infra*.

day before their intended use, and objections will be provided no later than **9:00 p.m.** the day before their intended use. The parties are to meet and confer to resolve any objections at **10:00 p.m.** the day before the exhibits' intended use. If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand.

43.     If a party proposes to read a statement **[Ravgen's Proposal:** by a party opponent from any pleading, request for admission response, interrogatory response, or]**[5]** from the Joint Statement of Uncontested Facts, they will provide notice of exactly the portion they intend to use by at least **7:00 p.m.** the day before the statement is intended to be used at trial. This notice provision does not apply when a party intends to use the statement during cross-examination or for impeachment purposes.

44.     If a party intends to use an exhibit during its opening statement to which the other party has objected, the party shall disclose the exhibit(s) by **7:00 p.m.** two (2) days before opening

---

[5] **Ravgen's Position:** Under the Federal Rules of Civil Procedure, "[a]n answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence." *See* Fed. R. Civ. P. 33(c); Fed. R. Civ. P 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."). And an opposing party's statements in the form of pleadings, responses to request for interrogatories, admission, and the Joint Statement of Uncontested Facts are not hearsay and, based on counsel's experience, are routinely read into the record at trial. *See* Fed. R. Evid. 801(d); *Huthnance v. D.C.*, 255 F.R.D. 297, 300 (D.D.C. 2008) ("[I]nterrogatories serve not only as a discovery device but as a means of producing admissible evidence; there is no better example of an admission of a party opponent, which is admissible because it is not hearsay, than an answer to an interrogatory."). Accordingly, Ravgen reserves the right to read into the record at trial Natera's statements in PTX-0030–40, 0044, -0045, -0052, -0054, -0058, and the Joint Statement of Uncontested Facts (**Ex. 1**).

**Natera's Position:** Natera is not aware of any authority indicating that a party's discovery responses can be treated differently than any other documentary evidence at trial. As such, there is no basis for allowing Ravgen to read portions of those documents into evidence at trial. Ravgen is certainly free to use those documents with appropriate witnesses or seek admission of those discovery responses into evidence consistent with this Court's and this Pretrial Order's rules regarding exhibits, to the extent they are otherwise admissible.

statements. If the opposing party continues to object to any such exhibit(s), it will provide any objections by **noon** the day before opening statements. The parties are to meet and confer to resolve any objections to these exhibit(s) at **3:00 p.m.** the day before opening statements. If good faith efforts to resolve objections to the exhibits to be used in opening statements fail, the objecting party shall promptly bring its objections to the Court's attention after the meet and confer.

45.    Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the demonstratives or exhibits or waiver of objection to the demonstratives or exhibits.

46.    The parties agree that they will not pre-exchange or identify exhibits to be used with any witness on cross examination. Documents, deposition transcripts, or portions thereof, or other items, not specifically identified on the parties Exhibit Lists or offered into evidence, may still be used at trial for purposes of cross examination, impeachment, or rehabilitation, if otherwise competent for such purposes, and may be admitted into evidence consistent with the requirements of the Federal Rules of Evidence.

47.    Exhibits not objected to will be received into evidence by the operation of this Joint Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness and moved into evidence consistent with the ¶40 above and Federal Rules of Evidence and this Order.

48.    A legible copy of an exhibit may be offered and received into evidence in lieu of the original, unless a genuine question is raised as to the authenticity of the original, or in circumstances where it would be unfair to admit the copy in lieu of the original.

49.     Legible copies of U.S. patents, and the contents of associated file histories, may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections which might be made to admissibility of certified copies.

50.     For exhibits that are Excel spreadsheets, PowerPoint presentations, images, video files, or other electronic files, the parties may use electronic versions of such exhibits in their native format. For demonstratives, the parties may copy-and-paste portions from original native versions of exhibits that are included on the parties' exhibit lists. The parties will exchange native versions of exhibits from the parties' final exhibit lists for this purpose (to the extent they exist) at the same time the parties exchange their final exhibit lists.

51.     The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

52.     The parties will use their best efforts to ensure that only one version of a copy of a document is admitted into evidence.  The parties agree that other versions of exhibits listed in the parties Exhibit Lists that have been produced, cited, considered, or marked during the course of this litigation may be substituted for versions of exhibits listed therein with otherwise substantively identical documents.

### B.  Demonstrative Exhibits

#### 1.     Direct Examination

53.     Ravgen's demonstrative exhibits will be identified by numbers prefixed with "PDX." Natera's demonstrative exhibits will be identified by numbers prefixed with "DDX."

54.     A party will provide demonstrative exhibits to be used in connection with direct examination, including indicating with which witness the demonstrative exhibits will be used, by **7:00 p.m.** the day before their intended use, and objections will be provided no later than **9:00 p.m.**

the day before their intended use. The parties are to meet and confer to resolve any objections at **10:00 p.m.** the day before the demonstrative exhibits' intended use. If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall promptly bring its objections to the Court's attention prior to the applicable witness being called to the witness stand.

55.     If any of the demonstrative exhibits change after they have been provided to the opposing party, including non-substantive edits and typographical corrections, the party intending to use the demonstrative exhibit will promptly notify the opposing party of the change(s) to provide the opposing party with reasonable notice of the changes before the demonstrative exhibits are presented to the jury.

56.     Where a demonstrative exhibit refers to information found in a trial exhibit, the party offering the demonstrative exhibit shall disclose to the other party all trial exhibits that form the basis of the demonstrative exhibit at the same time the party discloses the demonstrative exhibit.

57.     The party seeking to use demonstrative exhibits will provide a color representation of the demonstrative exhibits to the other side in PDF form in their order of intended use and with slide numbers as they will be numbered for use in Court. However, for video animations, the party seeking to use the demonstrative exhibit will provide it to the other side on a DVD, CD, or an external drive or make it available via a secure file share. For physical demonstrative exhibits, the party seeking to use the demonstrative exhibit will provide a color representation as an 8.5" x 11" PDF document. For physical demonstrative exhibits for which a color representation as a PDF is not feasible, the party must identify it in writing with specificity by the **7:00 p.m.** deadline and, upon request, make it available for inspection no later than the **9:00 p.m.** deadline for objections.

58.     This provision does not apply to demonstrative exhibits created during testimony, demonstrative exhibits created live in court, or demonstrative exhibits to be used for cross-examination, none of which need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

59.     Failure to comply with these procedures, absent an order from the Court or an agreement by the parties, will result in waiver of the use of the demonstrative exhibit or waiver of objection to the demonstrative exhibit.

### 2.      Opening Statements

60.     The parties will exchange demonstratives to be used in opening statements by **7:00 p.m.** two (2) days before opening statements. The parties will provide any objections to such demonstratives by **noon** on the day before opening statements. The parties are to meet and confer to resolve any objections to the demonstratives for opening statements at **3:00 p.m.** the day before opening statements. If good faith efforts to resolve objections to demonstratives to be used in opening statements fail, the objecting party shall promptly bring its objections to the Court's attention after the meet and confer on the morning of opening statements.

61.     This provision does not apply to demonstrative exhibits created during opening statements, which do not need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of trial exhibits or parts of trial exhibits, without more, are not required to be provided to the other side in advance of their use under this provision.

62.     No party can use any of the other party's disclosed demonstratives in its opening statement presentation before the disclosing party has used it in its own opening statement.

### 3.      Closing Argument

63.     The parties will not exchange demonstratives to be used in closing.

## VIII. WITNESSES

64.     Ravgen's list of witnesses that may be called to testify at trial, either live or by deposition, is attached as **Exhibit 6**.

65.     Natera's list of witnesses that may be called to testify at trial, either live or by deposition, is attached as **Exhibit 7**.

66.     Any witness not listed in **Exhibits 6** and **7** will be precluded from testifying, absent good cause shown.

67.     A party will provide a list of witnesses that the party intends to call for direct examination, the order the party expects to call the witnesses, and the method of testimony (i.e., live or by deposition) by **7:00 p.m.** two (2) calendar days before they are expected to testify. Any objections to a witness will be provided no later than **7:00 p.m.** one (1) day before they are expected to testify. The parties are to meet and confer to resolve any objections at **10:00 p.m.** one (1) day before the witness is expected to testify. If good faith efforts to resolve the objections fail, the party objecting to the witness shall bring its objections to the Court's attention prior to the witness being called to the stand. Each party shall update its list of expected witnesses and exhibits by **7:00 p.m.** at the end of each trial day.

68.     Any fact witness who will be made available to testify live in court: a) will be called only once; and b) will not be presented by either party by deposition testimony. Notwithstanding the preceding sentence, parties may use deposition testimony for purposes of impeachment.

69.     In the absence of an alternative agreement between the parties, fact witnesses to be called for live testimony, including rebuttal fact witnesses, shall be sequestered and may not be present in the courtroom during witness testimony until after they provide their live testimony, have been excused, and will not testify again at the trial. Fact witnesses shall not review the transcripts of the trial testimony of other fact witnesses. This provision does not apply to one

16

designated corporate representative for Ravgen and one designated corporate representative for Natera, who will be permitted to attend the entire trial (subject to exclusion as appropriate for certain highly confidential information). Expert witnesses and a party's corporate representative need not be sequestered and may be present in the courtroom during trial and/or review transcripts of trial testimony.

### A.   Testimony By Deposition[6]

70.   The parties agree to exchange affirmative deposition designations seven (7) days before their planned use at trial. The parties will exchange counter-designations and objections on affirmative designations the next day (six (6) days before planned use). The parties will exchange reply designations and objections on counter-designations the following day (five (5) days before planned use). The parties will exchange objections on reply designations the following day (four (4) days before planned use). The parties will meet and confer regarding any objections the following day (three (3) days before planned use). The parties will raise any outstanding objections with the Court on the morning of the day prior to their planned use.

71.   The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony, minus any attorney objections, and provide a final version of the video to the other party as soon as any final rulings are obtained from the Court and the video editing has been completed and to provide the video to the other party for review by 7:00 p.m. the day before it is to be shown to the jury. Deposition video will include subtitles of the testimony at the bottom of the screen that matches the witness's testimony.

---

[6] The parties have agreed to not exchange deposition designations earlier than the dates listed in this section, and so deposition designations and objections thereto have not been provided with this Joint Pretrial Order.

72.     Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony.

73.     At trial, the compilation of a witness's deposition testimony designated **[Ravgen's Proposal:** by the sponsoring party**]** and counter-designated by the **[Ravgen's Proposal:** non-sponsoring party**][Natera's Proposal:** parties**]**[7] shall be read or played by video in chronological order. The above chronological order requirement for deposition testimony does not apply to the use of deposition transcripts or deposition video for impeachment. Regardless of whether deposition testimony is read or played by video, the time for each party's designated portions will be charged to the designating party.

74.     All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

75.     When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-

---

[7] **Ravgen's Position:** Under Ravgen's proposal, for example, Ravgen will rely on designated deposition testimony to support its opening case and Natera will offer counter-designations that will be played along with Ravgen's designations in chronological order. Ravgen should not be required to include Natera's affirmative designations in Ravgen's opening case. Any streamlining of the trial presentation by requiring all designations from both parties being played at the same time is marginal and substantially outweighed by jury confusion. Natera's proposal will likely overwhelm the jury and deprive it of important context regarding subject matter to which it may not yet have been exposed prior to the deposition clip.

**Natera's Position:**   Neither party should be permitted to conduct piecemeal examination of deposition witnesses by playing only one side's designations of their testimony but not others during a particular phase of the case as Ravgen proposes.  That is not how live witnesses will be examined in the case (*see* paragraph 68, *supra*) and deposition witnesses should not be treated differently. Ravgen's proposed process would also create unnecessary inefficiencies, needlessly requiring the parties to create multiple deposition videos for the same witness and risking that the same portions of a witness's deposition might be played multiple times during the trial.  All of these issues can be avoided if the parties are required to play all designated deposition testimony from a particular witness at the same time.

designations that will be read or played. The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

76.     In order to reduce the number of duplicative exhibits, where a deposition excerpt references a document by deposition exhibit number and that identical document was also marked as a different exhibit number for use at trial, a party may substitute the trial exhibit for the deposition exhibit.

### B.  Impeachment With Prior Inconsistent Testimony

77.     Pursuant to Fed. R. Evid. 613, deposition and other testimony or statements not specifically identified on a party's deposition designation list or exhibit list may be used at trial for the purpose of impeachment, if otherwise competent for such purpose. The Court will rule at trial on any objections based on lack of completeness and/or lack of inconsistency.

### C.  Objections To Expert Testimony

78.     The parties have submitted *Daubert* motions and motions *in limine* that may affect the scope of expert testimony. The Court will rule on any objections to expert testimony as beyond the scope of expert disclosures at trial, taking time from the objecting parties' trial presentation to argue and decide such objections.

## IX.    JURY MATERIALS

79.     The parties' Joint Proposed Jury Instructions with disputes are attached as **Exhibit 8**.

80. Ravgen's proposed Verdict Form is attached as **Exhibit 9**.[8]

81. Natera's proposed Verdict Form is attached as **Exhibit 10**.[9]

82. The parties' joint proposed *voir dire* questions are attached as **Exhibit 11**.

83. The parties also expect to submit a joint proposed juror questionnaire for the Court's consideration. The parties are working on a draft of that proposed questionnaire and anticipate submitting that to the Court before the Pretrial Conference.

## X.   MOTIONS *IN LIMINE*

84. The parties' agreed motions *in limine* are listed below. In particular, the parties have agreed that they will not present the following at trial without first approaching the Court:

(1) Any argument, evidence, testimony, or reference commenting on the nationality, ethnicity, national origin, place of residence, religion, political affiliation, or language of a party or witness;

(2) Any argument, evidence, testimony, or reference to any motion or order to strike, exclude, or preclude (*e.g.*, Daubert challenges) testimony of any witness in unrelated lawsuits;

(3) Any argument, evidence, testimony, or reference to the fact that any expert was previously retained by or worked with the lawyers and/or law firms representing the parties in this case in other matters;

(4) Any argument, evidence, testimony, or reference relating to purported litigation misconduct or discovery disputes by the parties or their attorneys;

(5) Any argument, evidence, testimony, or reference commenting on other litigations, patent office proceedings, or judgments against any party or witness in the case that are unrelated to the patents-in-suit, the accused products, or cell-free DNA technologies;

(6) Any argument, evidence, testimony, or reference to potential or existing downstream uses of information or data from either party's products by clinicians or patients in decisions to terminate pregnancies; and

(7) Any argument, evidence, testimony, or reference to the number of attorneys representing either side, the geographic locations of any party's counsel or their

---

[8] In view of the numerous differences in the parties' proposed verdict forms, and since the issues that will be submitted to the jury may change before and during trial, the parties have agreed to reserve their respective objections to the opposing side's proposed verdict form until closer to trial.

[9] *See* Footnote 8, *supra*.

offices, the cost (including attorney's fees) of the litigation, or how the parties are funding the litigation (*e.g.*, investors in the litigation (except for any such investors who testify as witnesses at trial), litigation financing, attorney's fee arrangements, and/or any fees obtained or potentially obtained by counsel as a result of this case).

85.  Ravgen's motions *in limine* are attached as **Exhibit 12**, which includes Ravgen's

opening motions.  Natera's oppositions are being filed concurrently with this Joint Pretrial Order.

Ravgen filed motions *in limine* on the following:

**(1)**  Motion *In Limine* No. 1: To Preclude Any Disparagement Of The Patent Office Or Its Examiners;

**(2)**  Motion *In Limine* No. 2: To Preclude Any Reference To Forum Shopping, Litigation Abuse, Or The Western District Of Texas As A Popular Venue For Patent Litigation Or As An Improper Venue;

**(3)**  Motion *In Limine* No. 3: To Preclude Any Reference To, Or Any Argument, Evidence, Or Testimony Regarding Other Proceedings, Including Other Litigations And/Or Patent Office Proceedings;

**(4)**  Motion *In Limine* No. 4: To Preclude Any References Regarding Ravgen's Narrowing Of Asserted Claims;

**(5)**  Motion *In Limine* No. 5: To Preclude Any References, Evidence, Argument, Or Testimony Regarding Or Alluding To Ravgen's Claim Construction Expert, Dr. Wayne Grody, Including Any Implication That Ravgen Fired Dr. Grody;

**(6)**  Motion *in Limine* No. 6: To Preclude Any Reference To, Or Any Argument, Evidence, Or Testimony Regarding Alleged Misconduct Before The PTO;

**(7)**  Motion *in Limine* No. 7: To Preclude Any Reference To, Or Any Argument, Evidence, Or Testimony Regarding Other Potential Targets For Licensing Or Litigation;

**(8)**  Motion *in Limine* No. 8: To Preclude Any Reference To, Evidence, Testimony, Or Argument Regarding Licenses And Other Agreements Not Implicated By The Damages Models In The Present Litigation, Including Any Agreements Not Deemed Comparable By Either Party's Damages Expert;

**(9)**  Motion *in Limine* No. 9: To Preclude Any Reference To Natera Patents To Argue That Natera Does Not Infringe, That The Asserted Patents Are Invalid, Or That Those Patents Impact Damages;

**(10)**  Motion *in Limine* No. 10: To Preclude Any Reference, Testimony, Evidence, Or Argument Suggesting That A Damages Award May Increase The Price Of Products, Put Defendants Out Of Business, Or Lead To The Loss Of Jobs;

**(11)**  Motion *In Limine* No. 11: To Preclude Fact Witness Testimony Or Evidence Regarding Non-Infringing Alternatives Not Disclosed During Fact Discovery;

**(12)**  Motion *in Limine* No. 12: To Preclude Any Evidence, Testimony, Or Argument Relating To Investigation Of Or The Formation Of A Good Faith Belief Of Non-Infringement Or Invalidity; and

    **(13)**    Motion *In Limine* No. 13: To Preclude Any References, Evidence, Argument, Or Testimony Regarding Dr. Evans's Opinions On Dr. Dhallan's Credibility.

86.    Natera's motions *in limine* are attached as **Exhibit 13**, which includes Natera's opening motions.  Ravgen's oppositions are being filed concurrently with this Joint Pretrial Order. Natera filed motions *in limine* on the following:

    **(1)**    Precluding Testimony, Evidence, And Arguments That Natera Is Liable For Willful Infringement Because It Did Not Obtain An Opinion Of Counsel;

    **(2)**    Excluding Testimony, Evidence, And Arguments Relying On Streck's Patents To Attempt To Prove Infringement;

    **(3)**    Excluding Testimony, Evidence, And Arguments Regarding The Invalidity Of The "Lo" Patent; and

    **(4)**    Precluding Dr. Ravinder Dhallan Or Any Other Ravgen Witness From Testifying In Response To Questions Dr. Dhallan Was Unprepared, Unable, or Unwilling To Answer During His 30(b)(6) Deposition.

## XI.   LENGTH OF TRIAL

87.    This matter is scheduled for a 5-day jury trial beginning at 9:00 a.m. on December 13, 2021, with the subsequent trial days beginning at 9:00 a.m.

88.    The trial will be timed. Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, closing argument, its argument on any motions for judgment as a matter of law, and all sides' arguments on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.

89.    Considering that this matter is scheduled for a 5-day jury trial, the procedures for counting time, and considering the nature and extent of the parties' disputes, the parties request a total of 26 hours for their trial presentation, allocated as 13 hours per side.

90.    By no later than **noon** two (2) calendar days before the day on which a party intends to rest its case-in-chief, that party will provide notice to the other party of its intent to rest.

## XII.   LIST OF PENDING MOTIONS

91.   The following chart contains pending motions with the Court.

| Date | Motion |
|---|---|
| Sept. 24, 2021 | Defendants' Motion to Stay Pending *Ex Parte* Reexamination of the Asserted Patents (Dkt. 100) |
| Oct. 1, 2021 | Defendants' Motion to Exclude Certain Expert Testimony of Paul Meyer (Dkt. 104) |
| Oct. 1, 2021 | Defendants' Motion to Exclude Certain Testimony of Brian Van Ness, Ph.D. Regarding Willful and Induced Infringement (Dkt. 106) |
| Oct. 1, 2021 | Defendants' Motion to Strike Certain Expert Testimony of Glenn Prestwich, Ph.D. Regarding the Term "Cell Lysis Inhibitor" (Dkt. 108) |
| Oct. 1, 2021 | Plaintiff's Motion to Strike and Exclude Portions of the Responsive Expert Report of John Quackenbush Ph.D. Regarding Non-Infringement of U.S. Patent No. 7,332,277 (Dkt. 110) |
| Oct. 1, 2021 | Plaintiff's Motion to Exclude, in Part, the Expert Opinion of Mark I. Evans, M.D. (Dkt. 111) |
| Oct. 1, 2021 | Defendants' Motion for Summary Judgment (Dkt. 113) |
| Oct. 1, 2021 | Plaintiff's Motion for Summary Judgment Regarding Inventorship of U.S. Patent Nos. 7,332,277 and 7,727,720 (Dkt. 114) |
| Oct. 1, 2021 | Plaintiff's Motion to Strike and Exclude Certain Portions of the Rebuttal Expert Report of Jason Acker, Ph.D. (Dkt. 116) |
| Oct. 1, 2021 | Plaintiff's Motion for Summary Judgment of No Anticipation by Lee (Dkt. 117) |
| Oct. 1, 2021 | Plaintiff's Motion to Strike Portions of Defendants' Rebuttal Expert Reports that Rely on Non-Disclosed Damages Theories (Dkt. 118) |
| Oct. 1, 2021 | Plaintiff's Motion to  Exclude, in Part, the Expert Opinion of Mohan Rao, Ph.D. (Dkt 119) |

92.   **[Ravgen's Proposal:** Additionally, on July 22, 2021, the parties submitted a dispute chart to the Court regarding privileged documents.  *See* July 22, 2021 Email from Ms. Limbeek to Ms. Santasawatkul.  On July 26, 2021, Ms. Santasawatkul indicated that the Court would conduct an in camera review of certain documents the parties claim are privileged.  *See* July 22, 2021 Email from Ms. Santasawatkul to Counsel. The parties submitted those documents to the

Court before the July 28, 2021 deadline, and Ravgen is awaiting the Court's ruling on this dispute.][10]

## XIII.  ADDITIONAL MATTERS

93.     The parties respectfully submit the following agreed-upon matters for the Court's consideration:

### A.  Legal Fees Agreement

94.     The parties agree to exclude any reference to, or any argument, evidence, or testimony concerning the amount or type of legal fees a party incurred prosecuting or defending the case.

### B.  Motions For Judgment As A Matter Of Law

95.     The parties propose that motions for judgment as a matter of law be made orally and argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed. The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when such motions will be heard and whether the Court wishes to receive briefing.

---

[10] **Natera's Position:** Natera objects to Ravgen's eleventh-hour attempt to revive this issue. Ravgen has waited far too long to revisit this discovery matter now, and conducting an *in camera* review of numerous documents at this advanced stage would only distract the Court and parties from preparing this case for trial.  If Ravgen felt this matter was still relevant, Ravgen should have brought it to the Court's attention at least before expert discovery closed in September.  Natera reserves the right to seek further discovery and/or other relief if the Court orders any production of documents in response to Ravgen's belated request.

**Ravgen's Position:** The parties timely brought their privilege dispute to the Court for resolution during discovery.  It is not for Ravgen—or any party—to tell the Court when to resolve those disputes.  However, resolution of this dispute now—over a month before trial—is appropriate so that the parties may rely on any documents improperly withheld as privileged at that trial at least for purposes of cross examination.

### C.  Handling Of Confidential Information At Trial

96.    The parties do not anticipate requesting that the Courtroom be sealed during any portion of the trial.

97.    The parties agree to follow the provisions in the Protective Order (Dkt. 45) regarding the confidentiality of exhibits used at trial.  Insofar as the Protective Order restricts the dissemination and use of documents marked "CONFIDENTIAL," "RESTRICTED – OUTSIDE ATTORNEYS' EYES ONLY," or "RESTRICTED – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE," such restrictions shall not apply to the introduction of evidence at trial.

98.    The parties agree that any "CONFIDENTIAL," "RESTRICTED – OUTSIDE ATTORNEYS' EYES ONLY," or "RESTRICTED – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE," documents introduced into evidence at trial shall not be provided to any party representative or witness not permitted to see or possess such documents under the terms of the Protective Order. To the extent such documents are published to the jury at trial on monitors, this shall not constitute a violation of the Protective Order. Nor shall it waive the restrictions of the Protective Order.

99.    The parties agree that they will not remove any confidentiality markings from any documents. The parties agree that they should be precluded from any intimation that the marking of materials produced in discovery with any confidentiality designation had any improper purpose.

100.    The parties jointly request the Court to instruct the jury, the first time a confidential document is shown, that certain documents were marked as such before trial and that the jury should give no consideration to such markings.

101.    **[Natera's Proposal:** To address the parties' concerns regarding confidential information in documents to be used at trial, the parties agree to review the exhibits to be used with specific witnesses (once identified per the procedure discussed in Section VII.A. above) to

propose any redactions, to meet and confer regarding those redactions, and redact the exhibits before use in open court.][11]

### D.  Juror Notebooks

102.    The parties agree that jurors be permitted to write notes in the provided Juror Notebooks during the presentations of the parties and that jurors be permitted to bring these notes into the deliberation room. The parties propose that jurors be instructed not to exchange or share their notes with other jurors (though they may discuss the contents of their notes) and that the juror's notes be collected by the clerk each evening after the jury has been excused, and collected and destroyed without review after the jury is discharged.

103.    The parties agree that the Juror Notebooks will include:

- Glossary of patent terms (as described below)
- Pictures of witnesses on pages with space for notes

104.    The parties will continue to meet and confer regarding the inclusion of other content such as the Court's claim construction and the Asserted Patents in the Juror Notebooks.

---

[11] **Natera's Position:** Natera believes that both parties' exhibit lists likely include documents that, although not otherwise objectionable, contain undisputedly irrelevant, highly-sensitive, and potentially prejudicial information that should not be provided to the jury.  Natera anticipates that the producing party would be responsible for reviewing exhibits identified for use at trial and proposing such redactions, and so any burden to the other party would be minimal.  Natera simply proposes that the parties should attempt to resolve any disputes regarding such redactions in good faith during trial, and bring any such disputes that cannot be resolved to the Court, before such exhibits are published to the jury.

**Ravgen's Position:** Ravgen does not agree to be unduly burdened with proposing, reviewing, and redacting Natera's documents for use at trial.  Natera has not identified any precedent requiring such redactions nor has it identified any precedent stating that such redactions at this late stage are proper.

### 1.    Glossary Of Patent Terms

105.    The parties agree that the patent terms and definitions from the Joint Proposed Jury Instructions (**Ex. 8**) are to be included in the Juror Notebooks.

## XIV.   CERTIFICATION

106.    The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

   a.   Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

   b.   Subject to the parties' pending motions, discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with; and

   c.   Each exhibit in the parties' lists of exhibits attached hereto:

      i.   exists;

      ii.   is numbered; and

      iii.   has been disclosed and shown to opposing counsel.

**IT IS HEREBY ORDERED** that this Joint Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED:_____          _____
                                     United States District Judge

Approved as to form and substance:

| | |
|---|---|
| */s/ Kerri-Ann Limbeek* | */s/ Elizabeth Durham Flannery* |
| Deron R. Dacus | Stephen M. Hash |
| State Bar No. 00790553 | Texas Bar No. 24012800 |
| **THE DACUS FIRM, P.C.** | Samoneh Kadivar |
| 821 ESE Loop 323, Suite 430 | Texas Bar No. 24097911 |
| Tyler, TX 75701 | Alexander Piala (*pro hac vice*) |
| Phone: (903) 705-1117 | Texas Bar No. 24110223 |
| Fax: (903) 581-2543 | **BAKER BOTTS L.L.P.** |
| ddacus@dacusfirm.com | 98 San Jacinto Blvd., Suite 1500 |
| | Austin, Texas 78701 |
| John M. Desmarais (*pro hac vice*) | Phone: (512) 322-5471 |
| Kerri-Ann Limbeek (*pro hac vice*) | Fax: (512) 322-3622 |
| Brian D. Matty (*pro hac vice*) | stephen.hash@bakerbotts.com |
| Kyle G. Petrie (*pro hac vice*) | samoneh.kadivar@bakerbotts.com |
| Joze Welsh (*pro hac vice*) | alexander.piala@bakerbotts.com |
| Jun Tong (*pro hac vice*) | |
| Deborah J. Mariottini (*pro hac vice*) | Elizabeth Durham Flannery |
| Vi T. Tran (*pro hac vice*) | Texas Bar No. 24045815 |
| **DESMARAIS LLP** | Michael Hawes (*pro hac vice*) |
| 230 Park Avenue | Texas Bar No. 24010761 |
| New York, NY 10169 | **BAKER BOTTS L.L.P.** |
| Telephone: 212-351-3400 | 910 Louisiana Street |
| Facsimile: 212-351-3401 | Houston, TX 77002-4995 |
| jdesmarais@desmaraisllp.com | Phone: (713) 229-1234 |
| klimbeek@desmaraisllp.com | liz.flannery@bakerbotts.com |
| bmatty@desmaraisllp.com | michael.hawes@bakerbotts.com |
| kpetrie@desmaraisllp.com | |
| jwelsh@desmaraisllp.com | *Attorneys for Defendants Natera, Inc.* |
| jtong@desmaraisllp.com | *and NSTX, Inc.* |
| dmariottini@desmaraisllp.com | |
| vtran@desmaraisllp.comm | |

*Attorneys for Plaintiff Ravgen, Inc.*

October 28, 2021

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document and any attachments thereto via the Court's CM/ECF system on October 28, 2021.

<u>*/s/ Kerri-Ann Limbeek (pro hac vice)*</u>
Kerri-Ann Limbeek
