# EXHIBIT 1



Plaintiff's Trial Exhibit
PTX-1381
Case 6:20-cv-00969-ADA

# PATENT LICENSE AGREEMENT

**THIS PATENT LICENSE AGREEMENT** (hereinafter referred to as this "**Agreement**") is entered into as of the 23rd day of June, 2021 (the "**Effective Date**") by and between **Ravgen, Inc.**, a Delaware corporation having a place of business at 9241 Rumsey Road, Columbia, Maryland 21045 ("**Ravgen**") and **Thermo Fisher Scientific Inc.**, a Delaware corporation having a place of business at 168 Third Avenue, Waltham, Massachusetts 02451 ("**Thermo Fisher**"), each of which may be referred to as a "**Party**" or collectively as the "**Parties**."

WHEREAS, Ravgen alleges that Thermo Fisher indirectly infringes U.S. Patent No. 7,727,720;

WHEREAS, Thermo Fisher denies that it infringes, directly or indirectly, any patent owned by Ravgen;

WHEREAS, the Parties mutually desire to avoid the uncertainty and costs associated with litigation;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## 1. DEFINITIONS

As used in this Agreement:

**1.1** "**Affiliate**" means any Person, other than a Party, that on or after the Effective Date, directly or indirectly through one or more intermediaries, Controls, or is or under common Control with, or is Controlled by a Party. A Person shall be an Affiliate only during such period of time that it meets the foregoing definition. The terms "Control," "under common Control," and cognates thereof of an entity mean **(a)** direct or indirect ownership of more than fifty percent (50%) of the stock, securities, or participating shares entitled to vote for the election of directors of that entity, or the highest percentage allowed by applicable law of the voting equity or ownership interest in or of an entity; or **(b)** direct or indirect ownership of more than fifty percent (50%) of the equity or other interest or the power to control or direct the management and policies of such entity, or the highest percentage allowed by applicable law of the voting equity or ownership interest in or of an entity.

**1.2** "**Covered Products**" means any Thermo Fisher or Thermo Fisher Affiliate product, as well as any methods, processes, services, or procedures that are employed by Thermo Fisher or its Affiliates in connection with manufacture, use, or sale of such product.

**1.3** "**License Term**" means the period beginning on the Effective Date and ending on the expiration of the last date that any of the Licensed Patents are enforceable.

**1.4** "**Ravgen's Patents**" means the Ravgen Licensed Patents and the Ravgen Remaining Patents.

1

1.5 **"Person"** means an individual, trust, corporation, partnership, joint venture, limited liability company, association, unincorporated organization or other legal entity.

1.6 **"Ravgen Licensed Patents"** means United States Patent Nos. 7,727,720 and 7,332,277.

1.7 **"Ravgen Remaining Patents"** means all U.S. and foreign patents, patent applications, and provisional applications owned or controlled by Ravgen as of the Effective Date, excluding the Ravgen Licensed Patents, including utility and design patent applications and patents resulting from such provisional applications, any divisionals, renewals, extensions, continuations, foreign counterparts, reissues and re-examinations of those patents, patent applications and provisional applications, and any other U.S. or foreign patent or patent application owned by Ravgen that claims priority, directly or indirectly, to any such patents, patent applications, and provisional applications.

1.8 **"Subsidiary"** of a company means a corporation or other legal entity (1) the majority of whose shares or other securities entitled to vote for election of directors is now or hereafter controlled by such company either directly or indirectly, or (2) which does not have outstanding shares or securities but the majority of whose ownership interest representing the right to control or manage such corporation or other legal entity is now or hereafter owned by such company either directly or indirectly through other entities. Any such corporation or other legal entity shall be deemed a Subsidiary only for so long as such control or ownership exists.

1.9 **"Ravgen Releasing Parties"** means Ravgen and its Affiliates, parents, Subsidiaries, predecessors, successors, permitted assigns and any Person claiming by or through any of the foregoing.

1.10 **"Thermo Fisher Released Parties"** means **(a)** Thermo Fisher and its Affiliates; **(b)** past, current and future parents, Subsidiaries, predecessors, permitted successors, and permitted assigns of the Persons in (a); **(c)** all past, current and future directors, officers, individual shareholders, attorneys, and employees of the Persons in (a) and (b) solely to the extent of such Person's involvement, on behalf of a Thermo Fisher or its Affiliates, in developing, making, using, selling, importing or commercialization of any Covered Products; **(d)** past, current and future importers, distributors, resellers, distributors, end use and non-end use customers, purchasers and/or end users of any Covered Products, but solely to the extent of their import, purchase, possession, use or resale of Covered Products directly or indirectly from Thermo Fisher or its Affiliates; and **(e)** past, current and future vendors, suppliers, manufacturers, developers, original equipment manufacturers, contractors, and agents, solely to the extent of such Person's involvement on behalf of Thermo Fisher or its Affiliates in developing, making, using, or importing any Covered Products or components thereof.

1.11 **"Third Party"** means any Person or entity other than the Parties to this Agreement and their Affiliates and Subsidiaries.

1.12 **"Territory"** means world-wide.

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY

RAVGEN-00050168

PTX-1381.0002

## 2. LICENSE, RELEASES, AND COVENANTS

**2.1 License Grant to Thermo Fisher.** Subject to the provisions of this Agreement, and the receipt by Ravgen of Thermo Fisher's payment under Section 3.1, Ravgen hereby grants Thermo Fisher and its Affiliates a personal, non-exclusive, non-transferable, non-assignable (whether by operation of law or otherwise, except as expressly provided in Section 8.6 below), non-sublicensable (except as expressly provided in Section 2.12 and Section 8.7 below), perpetual, irrevocable, fully paid up, worldwide license under the Ravgen Licensed Patents, to make, have made, have used, sell, have sold, develop, have developed, export, have exported, import, have imported, offer for sale, and import Covered Products, and to practice and have practiced any method, process and/or procedure claimed in the Ravgen Licensed Patents in connection with the manufacture, use, or sale of Covered Products.

The foregoing license shall also include the right to extend to Thermo Fisher's distributors, resellers, customers, and users the rights to (i) use the Covered Products, including to perform services or quality control testing, (ii) convey to customers the right to have third parties use Covered Products solely for the benefit of said customer, (iii) employ Affiliates to make, use and sell Covered Products, (iv) employ third party distributors to sell Covered Products, (v) employ third parties to make Covered Products for sale under Thermo Fisher's or its Affiliates' label, and (vi) convey to third parties a right to re-sell Covered Products, including as incorporated or modified into other products, purchased from Thermo Fisher or its Affiliates under the label of said third party. None of the foregoing will be construed as a sub-license.

**2.2 Ravgen's Release for Any Alleged Past Infringement of the Ravgen Licensed Patents.** Subject to the provisions of this Agreement, and the receipt by Ravgen of Thermo Fisher's payment under Section 3.1, Ravgen, on behalf of itself and Ravgen Releasing Parties, hereby irrevocably, unconditionally, absolutely and forever, releases, acquits and discharges the Thermo Fisher Released Parties from any claim, counterclaim, demand, allegation, damage, loss, debt, liability, account, reckoning, indemnity, obligation, cost, expense, lien, attorneys' fee, any other action or cause of action of any kind and nature, whether at law or in equity, now known or unknown, suspected or unsuspected, asserted or unasserted, matured or unmatured, disclosed and undisclosed, for any alleged past infringement of the Ravgen Licensed Patents prior to the Effective Date of this Agreement, or for any acts that might be deemed infringement of the Ravgen Licensed Patents. The foregoing release shall also include the right to extend to Thermo Fisher's distributors, resellers, customers, and users the right to use, offer for sale, or sell products sold by Thermo Fisher prior to the Effective Date.

**2.3 Thermo Fisher's Release of Ravgen as to the Ravgen Licensed Patents.** Subject to the provisions of this Agreement, Thermo Fisher hereby irrevocably, unconditionally, absolutely and forever, releases, acquits and discharges Ravgen and its Affiliates, Subsidiaries, officers, directors, shareholders, managers, employees, agents, and attorneys from any claim, counterclaim, demand, allegation, damage, loss, debt, liability, account, reckoning, indemnity, obligation, cost, expense, lien, attorneys' fee, any other action or cause of action of any kind or nature, whether now known or unknown, suspected or unsuspected, matured or unmatured, asserted or

3

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY

unasserted, in law or equity, arising out of the Ravgen Licensed Patents; provided, however, that Thermo Fisher does not release and preserves the right to raise any and all defenses and counterclaims, and to otherwise contest the validity and enforceability of the Ravgen Licensed Patents in any forum, if the Ravgen Licensed Patents are asserted against Thermo Fisher Released Parties.

2.4 **Thermo Fisher's Covenant Not to Challenge the Ravgen Licensed Patents.** Subject to the provisions of this Agreement, Thermo Fisher covenants that, except as (1) required by law or (2) in defense of an action for infringing the Ravgen Licensed Patents brought against Thermo Fisher Released Parties, Thermo Fisher shall not knowingly and voluntarily contest (or assist any other Person in the contest) in any forum, including Federal Courts, whether under 28 U.S.C. §§ 2201-2202 or not, the United States Patent and Trademark Office, and/or the International Trade Commission, that the Ravgen Licensed Patents are valid and enforceable; provided, however, nothing in this Agreement shall prevent Thermo Fisher or its Affiliates from complying with or responding to any court or governmental order or subpoena. Notwithstanding the foregoing, should Ravgen allege or file an action for infringement of the Ravgen Licensed Patents against an entity that acquires or is acquired by Thermo Fisher after the Effective Date, nothing in this Agreement will prevent such entity from contesting the validity and enforceability of the Ravgen Licensed Patents in defense of such action.

2.5 **Thermo Fisher's Covenant Not to Challenge the Ravgen Remaining Patents.** Subject to the provisions of this Agreement and Ravgen's Covenant Not to Sue in Section 2.6, Thermo Fisher covenants that, except as (1) required by law or (2) in defense of an action for infringing the Ravgen Remaining Patents brought against Thermo Fisher Released Parties, Thermo Fisher shall not knowingly and voluntarily contest (or assist any other Person in the contest) in any forum, including Federal Courts, whether under 28 U.S.C. §§ 2201-2202 or not, the United States Patent and Trademark Office, and/or the International Trade Commission, that the Ravgen Remaining Patents are valid and enforceable; provided, however, nothing in this Agreement shall prevent Thermo Fisher or its Affiliates from complying with or responding to any court or governmental order or subpoena. Notwithstanding the foregoing, should Ravgen allege or file an action for infringement of the Ravgen Remaining Patents against an entity that acquires or is acquired by Thermo Fisher after the Effective Date, nothing in this Agreement will prevent such entity from contesting the validity and enforceability of the Ravgen Remaining Patents in defense of such action.

2.6 **Ravgen's Covenant Not to Sue.** Subject to the provisions of this Agreement, and in consideration of Thermo Fisher's Covenant Not to Challenge the Ravgen Remaining Patents set forth in Section 2.5, Ravgen hereby covenants not to sue (1) Thermo Fisher Released Parties for infringement of the Ravgen Remaining Patents by any Covered Product; or (2) Thermo Fisher's distributors, resellers, customers, and users for infringement of the Ravgen Remaining Patents by a Covered Product solely for infringement that arises from offering, selling, or using a Covered Product that is offered or acquired through distribution channels authorized by Thermo Fisher or its Affiliates. ==For the avoidance of doubt, to the extent any distributors, resellers, customers, or users of a Covered Product infringe the Ravgen Remaining Patents for==

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    RAVGEN-00050170

PTX-1381.0004

any reason that would not also give rise to a colorable claim against Thermo Fisher for direct or indirect infringement under 35 U.S.C. § 271, or other law of patent infringement outside the United States as may be applicable, but for the releases and covenants granted to Thermo Fisher herein, this covenant does not apply. Except as permitted by 8.6, this covenant not to sue is non-assignable by Thermo Fisher or by any of Thermo Fisher's distributors, resellers, customers, and users who benefit from this covenant not to sue.

2.7 **Ravgen's Release for the Ravgen Remaining Patents.** Subject to the provisions of this Agreement, and in consideration of Thermo Fisher's Covenant Not to Challenge the Ravgen Remaining Patents set forth in Section 2.5, Ravgen irrevocably, unconditionally, absolutely and forever, releases, acquits and discharges the Thermo Fisher Released Parties from any claim, counterclaim, demand, allegation, damage, loss, debt, liability, account, reckoning, indemnity, obligation, cost, expense, lien, attorneys' fee, any other action or cause of action of any kind and nature, whether at law or in equity, now known or unknown, suspected or unsuspected, asserted or unasserted, matured or unmatured, disclosed and undisclosed, for any alleged infringement of the Ravgen Remaining Patents prior to the Effective Date of this Agreement, or for any acts that might be deemed infringement of the Ravgen Remaining Patents. The foregoing release shall also include the right to extend to Thermo Fisher's distributors, resellers, customers, and users the right to use, offer for sale, or sell products sold by Thermo Fisher prior to the Effective Date.

2.8 **Acquisitions.** The licenses, releases and covenants set forth in this Agreement (including Section 2) shall exclude any products of another Person that is acquired by or that acquires (whether by merger, consolidation, share acquisition, or acquisition of all or substantially all assets or otherwise) either of the Parties on or after the Effective Date, except as provided in Section 2.12.

2.9 **General Releases.** The releases by Ravgen in Section 2.2 and the releases by Thermo Fisher in Section 2.3 each include an express, informed, knowing and voluntary waiver and relinquishment to the fullest extent permitted by law. In this connection, each Party acknowledges that it may have sustained damages, losses, costs or expenses which are presently unknown and unsuspected and that such damages, losses, costs or expenses as may have been sustained may give rise to additional damages, losses, costs or expenses in the future. Each Party further acknowledges that it has negotiated this Agreement taking into account presently unsuspected and unknown claims, counterclaims, causes of action, damages, losses, costs and expenses arising from or relating to the subject matter of this Agreement and each Party hereto voluntarily and with full knowledge of its significance, expressly waives and relinquishes any and all rights it may have under any state or federal statute, rule or common law principle, in law or equity, relating to limitations on general releases.

2.10 **California Waiver.** Each of the releases set forth in Sections 2.2 and 2.3 constitute a waiver of any and all provisions, rights, and benefits conferred by any law, including without limitation United States federal law, the law of any state or territory of the United States, and principles, rules, or decisions of common law or equity, that in any way limit the extent of the released claims as set forth above, including section 1542 of the California Civil Code (to the extent it applies to the subject matter of this Agreement) which provides:

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY

RAVGEN-00050171

PTX-1381.0005

>A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.
>
>Each Party understands and acknowledges the significance and consequence of this specific waiver of section 1542. Having had the opportunity to consult with legal counsel, each Party expressly waives and relinquishes any and all rights and benefits which it may have under section 1542 of the Civil Code to the full extent that such rights and benefits may be lawfully waived pertaining to the subject matter of this Agreement.

2.11 **No Other Rights.** No rights, licenses, covenants, or releases are granted under any patents except as expressly provided herein, whether by implication, estoppel or otherwise. No right to grant covenants, rights, sublicenses, or to become a foundry for Third Parties is granted under this Agreement. The Parties agree that, except as expressly set forth herein, the releases and covenants set forth in this Agreement (including Section 2) expressly exclude any methods, systems, products, services and/or components (collectively "Systems") of any Third Party except in those instances where such Third Party Systems are sold and/or used as part of, or together with, a Thermo Fisher Covered Product. The Parties further agree that, except as expressly provided herein, this Agreement does not cut off Ravgen's rights to enjoin, control, or extract royalties with respect to such Third Party's methods, systems, products, services and/or components provided that such rights are not contingent on the manufacture, use, sale, offer for sale, or import of Thermo Fisher Covered Products.

2.12 The licenses, covenants, and releases granted in Sections 2.1 through 2.7 shall apply to a grantee's Subsidiaries within the scope of the rights granted herein to the grantee (including releases for past infringement). For entities which become Subsidiaries after the Effective Date of this Agreement, any such license, covenant and release may be granted and shall become effective as of the date such Subsidiary became a Subsidiary of the grantee, but shall not provide any releases for activities performed by any such Subsidiary prior to the date on which it became a Subsidiary of grantee. Any license, covenant or release granted as provided in this Section 2.12 to any Subsidiary shall remain in effect only for so long as it remains a Subsidiary. However, Thermo Fisher shall not be responsible to Ravgen in any manner for any past infringements by such Subsidiary.

3. **PAYMENT**

   3.1 As consideration for the license, releases, covenants and other rights granted by Ravgen in this Agreement, Thermo Fisher shall make a one-time, lump sum payment to Ravgen, within ninety days of the Effective Date, in the amount of $58,000 USD. This lump sum payment will be deemed to be in full satisfaction of all license, releases, covenants and rights granted pursuant to the Agreement.

   3.2 The Parties agree that they shall bear their own costs and attorney fees relating to this Dispute and to the negotiation of this Agreement.

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY    RAVGEN-00050172

PTX-1381.0006

3.3  All payments from Thermo Fisher to Ravgen hereunder shall be made in US Dollars by means of wire transfer remittance to:

Bank Name:  Citibank, N.A.
Bank Contact Person: Alexis Wagner, Associate Banker
Bank Address:  153 East 53rd Street, New York, NY 10022
Bank Telephone No.: 212-559-0410
ABA:  021000089
Account Name:  Desmarais LLP
Bank Account No.:  9981486845
SWIFT Code:  CITIUS33
Tax ID for Company/Individual receiving payment (USA):  27-2419103

## 4.  CONFIDENTIALITY AND PUBLICITY

4.1  Nothing in this Agreement shall confer upon Thermo Fisher any right to include in advertising, packaging, or other commercial activities related to any product or service any reference to Ravgen in any manner whatsoever.

4.2  The Parties may disclose the existence of this Agreement but the financial and other terms are confidential and may not be disclosed except as provided below.  The terms of this Agreement may be disclosed by the Parties:

4.2.1  In the course of any licensing negotiation or litigation involving the Ravgen Licensed Patents, Ravgen may disclose the scope of rights and financial terms to a potential licensee or defendant in such negotiation or litigation, provided that Ravgen does so under a confidentiality agreement or protective order, designates the information at the highest level of confidentiality, and limits access, to the extent possible, to outside counsel only;

4.2.2  To their employees, consultants, auditors, accountants, financial and legal advisors and other professional advisors in their capacity of advising the Party in such matters, banks and/or legal counsel so long as such Persons have a need to know such terms and shall be apprised of the confidentiality of such terms;

4.2.3  As required by the securities laws or regulations or stock exchange or accounting rules, provided, however, that if reasonably practical any such required disclosures will not identify the other Party unless required to do so by law;

4.2.4  If subject to a formal discovery request or subpoena in a legal proceeding, subject to an appropriate protective order precluding disclosure to anyone other than outside counsel in the proceeding or as otherwise ordered by the court after notice to the Parties and opportunity for them to be heard, provided that recipient will promptly notify discloser in writing prior to making any said disclosure in order to allow discloser to seek a protective order or other appropriate remedy from the proper authority and in the event that said protective order or other remedy is not obtained, recipient will

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY

RAVGEN-00050173
PTX-1381.0007

furnish only that portion of the Confidential Information that recipient is legally required to disclose;

**4.2.5** Pursuant to judicial action or decree, or any requirement of any government or any agency or department thereof having jurisdiction over such Party;

**4.2.6** As reasonably required in connection with the enforcement of this Agreement; and

**4.2.7** In connection with possible mergers, acquisitions, sales of assets, investments, changes of control transactions, financing, or similar potential transactions, subject to a written agreement to maintain confidentiality or in the case of any public disclosure required by the securities laws or regulations or stock exchange rules, subject to paragraph 4.2.2 above.

**4.3** Sections 2.1, 2.2, 2.6 and 2.8 and the associated definitions of defined terms, of this Agreement may be disclosed by Thermo Fisher to Third Parties who make, sell or re-sell, offer to sell, import or distribute a Covered Product, and who have a need to know, under obligations of confidentiality at least as stringent as those contained herein.

**4.4** Neither Party will issue a press release or any other announcement regarding this Agreement unless both Parties provide prior consent in writing. The Parties shall direct their representatives not to make any disclosures of the terms of this Agreement.

**4.5** Except as required by law or deemed necessary under applicable federal or state securities laws or regulations, neither Party will use the name of the other Party, nor the name of any member of the other Party's staff, in connection with any publicity without the prior written approval of the other Party. Said approval may be provided, in the case of Thermo Fisher, only by Thermo Fisher's legal department.

**4.6** The obligations concerning confidentiality contained in Section 4.2 and 4.3 shall survive termination of this Agreement.

**4.7** Because an award of money damages would be inadequate for any breach of Section 4 of this Agreement by a Party and any said breach would cause the other Party irreparable harm, each Party also agrees that in the event of a breach or threatened breach of Section 4, the other Party will also be entitled to seek equitable relief, including injunctive relief and specific performance. Said remedies will not be the exclusive remedies for any said breach, but will be in addition to all remedies available at law or in equity.

## 5. TERM AND TERMINATION

**5.1** The term of this Agreement will continue until the expiration of the last of Ravgen's Patents.

**5.2** This Agreement may not be terminated for any reason prior to its expiration and each Party agrees that its remedy for any breach of this Agreement shall be to bring a claim to recover damages and to seek any other appropriate equitable relief (other than termination of this Agreement).

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY

RAVGEN-00050174

PTX-1381.0008

**5.3**   The following Sections shall survive termination of this Agreement: 1, 2, 4, 5.2, 6, 7 and 8.

## 6.   REPRESENTATIONS AND WARRANTIES

**6.1**   Ravgen and Thermo Fisher each represent and warrant to the other that it has the right and power to enter into this Agreement and to perform its obligations hereunder.

**6.2**   Ravgen represents and warrants that it is the owner of the entire right, title, and interest in and to its Patents and has the right and authority to grant the rights, licenses, and releases hereunder to Thermo Fisher.

**6.3**   Nothing contained in this Agreement shall be construed as a representation or warranty by either Party as to the scope, value, validity, or enforceability of any Patent.

**6.4**   EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, OR ASSUMES ANY RESPONSIBILITIES WHATSOEVER WITH RESPECT TO THE COMMERCIAL SUCCESS, USE, SALE, OR OTHER DISPOSITION BY OR FOR ANY OTHER PARTY (OR ITS SUBSIDIARIES) OR THEIR DISTRIBUTORS, USERS, OTHER CUSTOMERS, OR SUPPLIERS OF PRODUCTS INCORPORATING OR MADE BY THE USE OF INVENTIONS LICENSED HEREIN.  RAVGEN DOES NOT CONVEY ANY RIGHT OR LICENSE (EXCEPT TO THE EXTENT NECESSARY TO EXERCISE THE RIGHTS EXPRESSLY GRANTED HEREIN) BY IMPLICATION, ESTOPPEL, OR OTHERWISE, EXCEPT AS EXPRESSLY GRANTED HEREIN.

## 7.   NOTICES

Any notice required or permitted to be given to the Parties will be deemed to have been properly given if delivered in person or by certified mail, return receipt requested, if addressed to:

9

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                                          RAVGEN-00050175

PTX-1381.0009

| To Ravgen: | To Thermo Fisher: |
|---|---|
| John Varney | Contract Asset Management |
| 9241 Rumsey Road | Life Technologies Corporation |
| Columbia, MD 21045 | 5781 Van Allen Way. |
|  | Carlsbad, CA 92008 |
| Attention: John Varney | Attn: General Counsel |
| Telephone No.: 410-715-2111 | E: LMCC@thermofisher.com |
| Email: jvarney@ravgen.com |  |

**Copy To:**

John M. Desmarais

230 Park Avenue
New York, NY 10169

Attention: John M. Desmarais

Telephone No.: 212-351-3400

Email: jdesmarais@desmaraisllp.com

Any Party may change its notification address by providing the other Parties with a written notice to that effect within sixty (60) days of the effective date of such address change.

## 8 GENERAL PROVISIONS

**8.1 No Admission.** The entering of this Agreement will not be deemed as an admission of liability by Thermo Fisher or of the validity or invalidity of any position taken by Ravgen regarding Ravgen's Patents.

**8.2 Dispute Resolution.** This Agreement is entered into to resolve a legal dispute between the Parties and to avoid litigation.

**8.3** Nothing in the Agreement is to be construed as requiring the commission of any act contrary to law. Wherever there is any conflict between any provision of the Agreement and any statute, law or ordinance, or a treaty and its valid regulations, the statute, law, ordinance, or treaty and its valid regulations shall prevail. In such event, the provisions of the Agreement shall be curtailed and limited only to the extent necessary to bring them within the legal requirements, and such provisions, so curtailed and limited, together with all other provisions of the Agreement shall continue in full force and effect.

**8.4 Severability.** All rights and restrictions contained in this Agreement may be exercised and will apply and bind only to the extent that they do not violate any applicable state or federal laws and are intended to be limited to the extent necessary so that they will not render this Agreement illegal, invalid, or unenforceable. If any

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY

RAVGEN-00050176

PTX-1381.0010

provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future law effective during the term hereof, that provision will be fully severable and this Agreement will be construed and enforced as if the illegal, invalid, or unenforceable provision never comprised a part of this Agreement. The remaining provisions will remain in full force and effect and will not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Agreement.

8.5 **Binding Effect.** This Agreement shall inure to the benefit of, and be binding upon, the parents, subsidiaries, Affiliates, assigns and successors of the Parties, including any entity directly or indirectly controlled by a Party.

8.6 This Agreement and the rights and licenses granted hereunder are personal to Ravgen and Thermo Fisher, and neither of them may assign its respective rights, or delegate its respective obligations or duties under this Agreement, to any third party without the express written consent of the other Party; except that either Party may assign this Agreement to an acquiring party without the written consent of the other Party in the event that the assigning party is acquired by such acquiring party, becomes a subsidiary of such acquiring party, or is merged into such acquiring party, provided that: (i) such acquiring party expressly acknowledges all of the terms and conditions of this Agreement and assumes all the obligations hereunder; (ii) the rights and licenses afforded to such acquiring party shall be limited to the Covered Products of the acquired Party at the time of such assignment and reasonable extensions thereof; and, (iii) no rights shall extend under this Agreement to such acquiring party or to any product or service that was offered by such acquiring party prior the date of the acquisition. Other than as set forth above, any purported assignment or transfer of this Agreement without such consent shall be null and void.

8.7 In the event that a Subsidiary of a Party is divested from such Party, the divesting Party shall have the right to grant to such divested Subsidiary, without further consent from the other Party, a sublicense and release co-extensive with those granted in this agreement to the divesting Party; provided, however, that (i) the sublicense so granted shall be limited to the Covered Products of such Subsidiary at the time of such divestiture and reasonable extensions thereof; and (ii) no rights shall extend under this Agreement to an acquiring party of the divested Subsidiary or to any product or service that was offered by the acquiring party prior the date of the acquisition.

8.8 The rights and licenses set forth in Section 2 shall remain in full force and effect regardless of any subsequent transfer or assignment of any of Ravgen's Patents or any rights or interests therein or thereto. Ravgen agrees that in the event it sells or otherwise transfers one or more of Ravgen's Patents, the agreement governing such sale or transfer shall state that such sale or transfer is subject to the rights and licenses granted to Thermo Fisher under this Agreement (or to prior encumbrances generally). Any attempt to sell or transfer a Licensed Patent without making the sale or transfer subject to such rights and licenses shall be void.

8.9 All licenses granted under this Agreement are and shall be treated as licenses of "intellectual property" under Section 101(35A) of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") and applicable foreign equivalents, if any, and the provisions of Section 365(n) of the Bankruptcy Code shall apply to such licenses. This Agreement is

11

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY

RAVGEN-00050177

PTX-1381.0011

to be deemed and treated as an executory contract under Section 365 of the Bankruptcy Code and is subject to the restrictions on assumption and assignment in section 365(c).

8.10 This Agreement will not be binding upon the Parties until it has been signed below by or on behalf of each Party, in which event, it shall be effective as of the Effective Date. No amendment, modification, supplement or waiver hereof shall be valid or binding upon the Parties unless it expressly references this Agreement and is made in writing and signed on behalf of each Party.

8.11 **Relationship.** The relationship of the Parties is that of independent contractors, and nothing herein will be construed as establishing one Party or any of its employees as the agent, legal representative, joint venturer, partner, employee, or servant of the other. Except as set forth herein, neither Party will have any right, power or authority to assume, create or incur any expense, liability or obligation, express or implied, on behalf of the other.

8.12 **No waiver.** The failure of a Party to enforce any provision of this Agreement shall not prevent the subsequent enforcement of such provision. Any waiver of enforcement of any provision of the Agreement shall not be deemed a waiver of any subsequent breach.

8.13 **Governing Law.** This Agreement shall be construed in accordance with the laws of the United States and the State of Delaware, without regard to conflicts of laws principles. The Parties hereby submit to the jurisdiction of, and waive any venue objections against, the state and federal courts in Delaware.

8.14 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties concerning the subject matter of this Agreement and supersedes all other agreements, oral or written, if any, between the Parties relating to the subject matter of this Agreement. The Parties stipulate that no Party has made any representations with respect to the subject matter of this Agreement or its execution or delivery, except those representations set forth in this Agreement.

8.15 **Headings.** The paragraph headings contained in this Agreement are provided for convenience only and will not be considered in the interpretation and construction of this Agreement.

8.16 **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is deemed an original, but all of which together constitutes one and the same instrument. For purposes of this Agreement, a signature on a counterpart sent by facsimile or as a Portable Document Format (PDF) attachment to an email shall be fully binding as though it was an original signature.

8.17 **Warranty of Authority.** Each person signing this Agreement warrants that he/she is authorized to execute this Agreement on behalf of the Party for whom he/she signs.

[Remainder of this page intentionally left blank]

THIRD PARTY CONFIDENTIAL – ATTORNEYS' EYES ONLY

RAVGEN-00050178

PTX-1381.0012

13

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY

RAVGEN-00050179
PTX-1381.0013

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

**RAVGEN, INC.**

By: *Ravinder S. Dhallan*

Name: Ravinder S. Dhallan

Title: Chief Executive Officer

Date: 6/24/21

**THERMO FISHER SCIENTIFIC INC.**

By: *[signature]*

Name: Abhijit Afzalpurkar

Title: Director, Innovation Partnerships

Date: June 23, 2021

14

THIRD PARTY CONFIDENTIAL - ATTORNEYS' EYES ONLY

RAVGEN-00050180
PTX-1381.0014